UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TOMMY LEE FARR,

        Plaintiff,

v.

UNKNOWN PARTIES,

        Defendants.
_____/

Case No. 1:18-cv-575

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.     **Factual allegations**

Plaintiff Tommy Lee Farr is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga County, Michigan. The events about which he complains occurred while he was incarcerated at the Earnest C. Brooks

Correctional Facility (LRF) in Muskegon County, Michigan. Plaintiff sues five unknown corrections officers at LRF.

Plaintiff alleges that on June 23, 2016, he received a note from another prisoner threatening to kill him. He went to the front desk at LRF, told two of the defendants about the note, and asked to be placed in protective custody. One of the defendants grabbed him by the neck, pushed his hand under Plaintiff's nose, and pushed Plaintiff's neck backwards, making it hard for Plaintiff to breathe. The four other defendants "attacked" Plaintiff from behind, trying to force him down the hallway back toward his cell. When doing this, they pulled his left arm backwards.

Plaintiff alleges that he sustained an injury to his neck and a torn rotator cuff. He alleges that he is in constant pain in his neck and shoulder. He contends that Defendants violated his rights under the Eighth Amendment. As relief, he seeks a declaratory judgment and damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

3

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346. Moreover, the Court must give "'wide-ranging deference'" to prison officials confronted with a disturbance, because they "'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance[.]'" *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320-21).

Plaintiff's claim fails because it is clear that there was a sufficient penological justification for Defendants' actions, and there is no indication that they acted maliciously or sadistically to cause harm. Attached to Plaintiff's complaint is a Misconduct Hearing Report regarding the incident in question. Apparently, Plaintiff was found guilty of "physical resistance or physical interference with an employee," a Class I misconduct, for resisting officers' attempts to put him in restraints. (Class I Misconduct Hr'g Rep., ECF No.1, PageID.6.) In other words, contrary to Plaintiff's assertion that officers attacked him, they attempted to put him in restraints because he was agitated, but he physically resisted their attempts to do so.

4

> According to the hearing officer:
>
> I viewed video which showed the prisoner being agitated and acting animated in front of the desk for several minutes. Additional staff entered the unit and went to cuff the prisoner up. The prisoner had his hands clenched together in front of him. An officer took hold of his left arm and got it loose from his front and the prisoner pulled his left arm back and again clenched his hands in front of him[]self. Staff on both sides tried to get the prisoner's arms free and the prisoner resisted this effort by keeping his hands clenched in front of him and he was bent over and struggling against the officers. An officer applies a[n] infraorbital restraint technique (finger pressed up and under prisoner's nose) during the evolution.
>
> * * *
>
> According to the Misconduct Report while restraining Farr he pulled away from Reporting Officer's grip when he was applying hand restraints and he proceeded to push away and resist being cuffed up. I have viewed video which shows this to be the case as specified above. The prisoner provided a written statement explaining being assaulted by his cellmate earlier that morning and says he was at the desk and he was rushed and handcuffed and officers tried to suffocate him by putting some type of tactic on his nose. He asserts officers assaulted him. The video shows this is untrue. Officers remained behind desk as the prisoner carried on for several minutes before officers move out and confronted the prisoner and then tried to place him in restraints as other officers respond. He wasn't rushed, in fact officers behind desk were quite restrained in their handling of the situation. As the video shows, the prisoner physically resisted the Reporting Officer and another officer trying to place him in cuffs. I find the prisoner guilty of the charged offense.

(*Id.*)

Findings in a Class I misconduct hearing have a preclusive effect in subsequent proceedings where (1) the "issues were actually litigated and decided"; (2) the "party to be precluded had sufficient incentives to litigate those issues"; and (3) the party had "a full and fair opportunity to do so—not just in theory, but in practice." *Roberson v. Torres*, 770 F.3d 398, 404-05 (6th Cir. 2014). Preclusion "likewise turns on the court's sense of justice and equity, which may require a case-by-base analysis of surrounding circumstances." *Id.*

The question in this case is whether Defendants applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 7. The findings in Plaintiff's Class I misconduct hearing show that Defendants' use of force

was justified. They were attempting to put Plaintiff in restraints but he resisted. Instead of allowing himself to be placed into handcuffs with his arms behind him, he clenched his hands together and resisted Defendants' efforts to pull his left arm backward. He also bent forward and struggled, and an officer had to push him under the nose to force him upright. In other words, Plaintiff resisted in exactly the manner that necessitated the use of force alleged in the complaint.

The hearing officer's findings regarding Plaintiff's disruptive behavior and resistance provide the necessary context and justification for the use of force. These factual findings were clearly "essential to the judgment" in the misconduct proceeding. *See Peterson v. Johnson*, 714 F.3d 905, 914 (6th Cir. 2013).

The hearing officer did not make specific findings regarding the *amount* of force used by the officers; it is possible for a prison official to apply too much force when attempting to restrain an unruly prisoner. However, nothing in the complaint suggests that the amount of force applied in Plaintiff's case rose to the level of an Eighth Amendment violation. Plaintiff apparently relies on the fact that he suffered pain and was injured, but the fact of injury alone is not sufficient. *See id.* at 908, 911 (officers' use of force justified even though the prisoner suffered injury and nerve pain in his wrist following a "scuffle" with officers who were attempting to restrain him). A prisoner physically resisting a prison official's attempt to place him in restraints puts himself and prison officials at risk of injury. And in this case, the injuries alleged by Plaintiff are directly related to his physical resistance, and are of the type one might expect from such resistance. If Plaintiff had not clenched his hands together and pulled his left arm forward, it would not have been necessary for officers to pull it back, putting his shoulder at risk of injury. And if he had not struggled and leaned forward, it would not have been necessary for officers to apply pressure to

6

his neck and face to force him upright, potentially straining his neck. Thus, the hearing officer's findings are directly relevant to Plaintiff's claim in this case.

Moreover, it is telling that Plaintiff's defense to the misconduct charge is the same as his claim here: he contends that the officers assaulted him.[1] In Plaintiff's view, he was not resisting the officers' lawful attempts to restrain him; rather, he was unjustifiably attacked. The hearing officer considered this issue and his factual findings unquestionably refute Plaintiff's account. Thus, the first element in *Roberson* is satisfied.

As to the second element, Plaintiff had sufficient incentive to litigate the facts at issue. He faced a possible penalty for conviction on the misconduct charge, and he apparently did contest the charge by asserting that he was assaulted. *See id.* at 915 (finding that prisoner had sufficient incentive because of the possible consequences of misconduct conviction and because he actually contested the charge).

Regarding the third element, Plaintiff had a full and fair opportunity to litigate the issues at stake. *See id.* at 916-17 (finding that prisoner had full and fair opportunity to litigate a factual issue in a Class I misconduct proceeding in the MDOC). He apparently waived his opportunity to attend the misconduct hearing, but a failure to use procedures available to him does not show that the procedures themselves were inadequate. *See id.* at 916. Moreover, the hearing officer based his factual findings on his review of a video of the incident, which limits the possibility of bias or unfairness in his misconduct proceedings. *Compare Roberson*, 770 F.3d at 405 (requiring a remand to evaluate the fairness of the proceedings where the hearing officer refused to review video of the incident) *with Peterson*, 714 F.3d at 916-17 (finding that the

---

[1] According to the hearing report, Plaintiff did not attend the hearing because he refused to do so. Plaintiff alleges that he did not provide a written statement to the hearing officer; however, the hearing officer clearly considered Plaintiff's defense that he was assaulted.

proceedings were fair where the hearing officer reviewed video of the incident). To the extent that Plaintiff disagrees with the hearing officer's description of the video, he could have challenged it by appealing the hearing officer's decision to state court, and the "state court would have automatically made the video a part of the record." *Peterson*, 714 F.3d at 916 (citing MICH. COMP. LAWS § 791.253(2)).

Finally, the Court's sense of "justice and equity" favor giving the hearing officer's findings preclusive effect. Plaintiff alleges that the hearing officer falsified various statements in the hearing report, but none of the allegedly false statements concern the officers' findings regarding Plaintiff's conduct in front of the prison guards. That conduct is captured in a video record described by the hearing officer. Allowing Plaintiff's claim to proceed in this action would likely involve a review of that same video, and there is no reason to believe that this Court would arrive at a different conclusion after doing so. Thus, the findings in the misconduct hearing report have preclusive effect in this action.

Accordingly, when taking the hearing officer's findings into account, Plaintiff fails to state an Eighth Amendment claim because the officers were justified in applying force to Plaintiff, and "nothing in his allegations about the force used against him shows that it was diabolically intended to harm him." *Id.* at 911.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: June 19, 2018                     /s/ Janet T. Neff
                                         Janet T. Neff
                                         United States District Judge